IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 |
| | ) | |
| Cristopher Browne, | ) | No.  26-05625 |
| | ) | |
| Debtor. | ) | Judge Deborah A. Thorne |

**CREDITOR CHARITY BROWNE'S OBJECTION TO CONFIRMATION OF
CHAPTER 13 PLAN**

Creditor Charity Browne, through undersigned counsel, respectfully submits this
Objection to Confirmation of the Chapter 13 Plan filed by Christopher R. Browne on March 31,
2026. The Debtor's proposed plan fails to satisfy the mandatory confirmation requirements of 11
U.S.C. § 1325 and cannot be confirmed.

Specifically, the proposed plan is fatally defective in three critical respects: First, the plan
is not feasible because the Debtor's monthly income is mathematically insufficient to make all
payments required under the plan. Second, the plan fails to provide proper treatment for Charity's
secured claim arising from a judgment lien recorded against the Debtor's residence on March 23,
2026, in violation of *11 USCS § 1325*. Third, the Debtor's schedules materially understate and
mischaracterize the amounts owed to Charity as established by multiple state court orders,
rendering the plan's proposed distribution to creditors fundamentally flawed.

The Debtor proposes to pay $864 per month to the trustee for 36 months while
simultaneously making direct mortgage payments totaling $4,450 per month. However, the
Debtor's total monthly income is only $6,038 (which includes 1,000 a month from Debtor's
Daughter). When combined with communication from Debtor to Charity Browne regarding his
finances on February 19, 2026 which states that half of his year, his income is significantly lower
than the remainder of the year, and the bare bone budget which has the Debtor's total monthly

obligations of $729.83. This the Plan payments are not feasible long term which alone warrants denial of confirmation.

Moreover, the plan completely ignores Charity's $27,403.75 judgment lien recorded against the Debtor's residence eight days before the bankruptcy filing. The plan neither lists Charity as a secured creditor nor provides any treatment for this lien, in direct violation of § 1325(a)(5)'s requirement that all secured claims receive proper treatment.

For these reasons, and as more fully set forth below, Charity respectfully requests that this Court deny confirmation of the Debtor's proposed Chapter 13 plan and require the Debtor to file an amended plan that addresses these fundamental deficiencies.

## STATEMENT OF FACTS

### A. The Parties and Bankruptcy Filing

Christopher R. Browne filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on March 31, 2026, in the United States Bankruptcy Court for the Northern District of Illinois. Charity Browne is the Debtor's former spouse and a creditor in this bankruptcy case.

### B. The Debtor's Financial Condition

According to Schedule I filed with the bankruptcy petition, the Debtor's combined monthly income totals $6,038.00, consisting of:

1. Net income from Wheaton Press Foundation (a non-profit corporation wholly controlled by the Debtor): $4,740.00
2. SNAP benefits: $298.00
3. Contributions from daughter and son-in-law: $1,000.00
4. Wages or salary: $0.00

The Debtor reports monthly expenses of $5,174.00 on Schedule J, resulting in net monthly income of $864.00.

The Debtor is the sole proprietor of The Wheaton Press Foundation, described as a non-profit corporation that provides consulting services for international Christian schools to provide student curriculum and teacher training. According to the Debtor's schedules, this entity does not have any assets, inventory, or accounts receivable.

## C. The Debtor's Real Property and Secured Claims

The Debtor owns a residence located at 2557 Emerald Lane, Yorkville, Illinois 60560, in Kendall County. Schedule A/B values this property at $480,200.00, based on a Zillow estimate. The property is encumbered by two mortgages held by Rocket Mortgage:

1. First mortgage: $402,034.00
2. Second mortgage: $84,562.00 (with alleged unsecured portion of $6,396.00)
3. Total mortgage debt: $486,596.00

The total mortgage debt exceeds the Debtor's stated property value by $6,396.00. However, according to a simple internet search, the value of the residence is $515,015.00, which would provide equity not only for the secured claims, but also Charity's secured claim.

## D. The Divorce Proceedings and State Court Orders

The dissolution of the parties' marriage generated multiple state court orders establishing the Debtor's obligations to Charity:

## 1. Judgment of Dissolution (August 1, 2024)

The Kendall County Circuit Court entered a Judgment of Dissolution of Marriage on August 1, 2024. The judgment awarded the marital residence at 2557 Emerald Lane to the Debtor and ordered him to pay Charity $98,662.00 for her interest in the real estate.

## 2. Order to Pay Marital Debts (February 10, 2026)

On February 10, 2026, the Kendall County Circuit Court entered an order modifying the provisions of the dissolution judgment regarding marital debts. This order established that as of that date, the total marital debts held in Charity's name were $67,384.04, consisting of:

1. Citibank Credit Card: $11,917.14
2. Discover Credit Card: $11,708.54
3. Discover Loan: $33,758.36
4. EIDL Loan: $10,000.00

The February 10, 2026 order specifically provides: "The parties acknowledge and agree that [Christopher will] pay off the total balance of $67,384.04 in monthly installments of $1,403.83 for the duration of forty-eight (48) months." The order further states: "Payments shall begin on February 25, 2026, and shall continue for forty-eight (48) consecutive months, with payments being due on the 25th of each month. Christopher shall tender payments directly to Charity by way of check that shall be mailed via USPS. Each mailed check shall be postmarked no later than the 22nd of each month."

The Debtor was therefore obligated to make his first payment of $1,403.83 to Charity on February 25, 2026, more than one month before filing bankruptcy.

**3. Attorney's Fee Judgment (February 17, 2026)**

On February 17, 2026, the Kendall County Circuit Court entered an order awarding Charity $27,403.75 in attorney's fees and costs against the Debtor pursuant to Section 508(b) of the Illinois Marriage and Dissolution of Marriage Act. The order states: "Judgment in the amount of $27,403.75 is entered against Christopher Browne and in favor of Charity Browne. The Court finds the fees were fair, necessary, and reasonable to prosecute the petitions for rule."

**4. Recording of Judgment Lien (March 23, 2026)**

On March 23, 2026, eight days before the Debtor filed bankruptcy, a Memorandum of Judgment was recorded in Kendall County, Illinois, against the Debtor's property at 2557 Emerald Lane, Yorkville, Illinois 60560 (Permanent Index Number 02-22-177-004). This memorandum memorialized the February 17, 2026 judgment for $27,403.75 in attorney's fees, thereby creating a judgment lien on the Debtor's residence.

**E. The Debtor's Schedules and Treatment of Charity's Claims**

Despite the multiple state court orders establishing distinct obligations to Charity, the Debtor's Schedule E/F lists Charity as holding only a single unsecured claim for $98,661.84, described as a property settlement. The schedules do not separately identify:

1.  The $67,384.04 in marital debts payable at $1,403.83 per month for 48 months

2.  The $27,403.75 attorney's fee judgment

3.  The secured nature of the attorney's fee claim arising from the recorded judgment lien

Schedule D (Creditors Who Have Claims Secured by Property) lists only the two Rocket Mortgage loans. Charity is not listed as a secured creditor despite holding a recorded judgment lien against the Debtor's residence.

Additionally, the amount of the Claim of Charity is insufficient; the Debtor agreed to pay $46,500 for Charity's interest in the marital home (he has paid $18,083.38, leaving a current balance of $28,416.62), $67,384.04 toward marital debts, and the court-ordered amount of $27,403.75. Total principle claim of Charity is $123,204.41 not 98,661.84.

Additionally, under Illinois law, the statutory rate of interest on state court judgment is governed by 735 ILCS 5/2-1303. Generally, judgments recovered in any court accrue interest at 9% per annum from the date of judgment until satisfied. Courts evaluate whether awarding interest would be fair and just under the circumstances.

Illinois courts have consistently held that the decision to award interest on divorce-related judgments, including property settlements, is discretionary. This principle was affirmed in *Finley v. Finley*, 81 Ill. 2d 317 (1980). Interest is typically allowed where equitable considerations warrant it, such as when one party has been deprived of the use of money due to the other party's delay or wrongful withholding. Conversely, interest may be denied if awarding it would be

inconsistent with principles of fairness and equity. *Robinson v. Robinson*, 140 Ill. App. 3d 610

(1986*), McKenzie Dredging Co. v. Deneen River Co*., 249 Ill. App. 3d 694 (1993). In this case,

interest is warranted because the marital debt involved was credit card debt taken out by the

Debtor in Charity's name, and she incurs interest on that debt.

**F. The Proposed Chapter 13 Plan**

The Debtor filed a Chapter 13 plan on March 31, 2026, proposing the following terms:

**Plan Payments:** The Debtor proposes to pay $864.00 per month to the Chapter 13 trustee for 36

months, for a total of $31,104.00.

**Direct Mortgage Payments:** Section 3.1 of the plan provides that the Debtor will make direct

payments to Rocket Mortgage as follows:

1. First mortgage: $3,700.00 per month

2. Second mortgage: $750.00 per month

3. Total direct mortgage payments: $4,450.00 per month

**Treatment of Unsecured Claims:** The plan proposes to pay 10% of allowed nonpriority

unsecured claims, with an estimated payment of $23,246.20.

**Treatment of Charity's Claims:** The plan does not list Charity as a secured creditor. The plan

makes no provision for Charity's judgment lien and falsely reduces the residence's value to

reduce the amount of secured claims.

G. Mathematical Infeasibility of the Plan

The Debtor's proposed plan requires the following monthly payments:

1. Trustee payment: $864.00
2. First mortgage (direct payment): $3,700.00
3. Second mortgage (direct payment): $750.00
4. Home Owner's Association (direct payment): 45.83
5. Charities secured claim (if properly paid under the plan): $761.22
6. **Total monthly obligations: $6,121.05**

The Debtor's total monthly income is $6,038.00. The Debtor's monthly obligations therefore exceed his monthly income by $83.05, creating a mathematical impossibility to make the proposed plan payments. The plan cannot be completed as proposed.

## H. Procedural Posture

The meeting of creditors under 11 U.S.C. § 341 is scheduled was May 5, 2026. The confirmation hearing is scheduled for June 3, 2026. The deadline for creditors to file proofs of claim is June 9, 2026 (September 28, 2026 for governmental units). Charity timely files this objection to confirmation based on the plan's failure to satisfy the mandatory requirements of 11 U.S.C. § 1325(a)(5) and (a)(6), and the material inaccuracies in the Debtor's schedules regarding amounts owed to Charity.

<b>ARGUMENT</b>

I.   **THE PLAN FAILS THE FEASIBILITY REQUIREMENT BECAUSE THE DEBTOR'S INCOME IS INSUFFICIENT TO MAKE ALL REQUIRED PAYMENTS**

The Debtor's proposed Chapter 13 plan cannot be confirmed because it fails the feasibility requirement. The Debtor's monthly income of $6,038 is mathematically insufficient to cover his monthly obligations of $6,121.05, creating a shortfall of $83.05 every month. This mathematical impossibility, combined with unreliable income sources and the plan's failure to account for court-ordered payments to Charity Browne, renders the plan infeasible as a matter of law.

## A. Legal Standard for Feasibility

Section 1325(a) requires that the court confirm a plan only if the debtor will be able to make all payments under the plan and to comply with the plan. The court stated in *In re Multiut Corp.*, 449 B.R. 323, 347 (Bankr. N.D. Ill. 2011) as follows:

Bankruptcy courts have an affirmative obligation to ensure that plans are feasible. *Sentinel*, 398

B.R. at 318; (citing *Repurchase Corp.*,332 B.R. at 343). The proponent need not demonstrate that a plan carries a guarantee of success. *Id.* Rather, a plan must "provide[] for a reasonable assurance of [**54] commercial viability." *Id.* (internal quotation omitted). The feasibility requirement mandates that the plan proponent offer concrete evidence of sufficient cash flow to fund and maintain both its operations and its obligations under the plan. *Coones v. Mut. Life Ins. Co. of N.Y.*,168 B.R. 247, 255 (D. Wyo. 1994), aff'd,56 F.3d 77 (10th Cir. 1995). "Confirmation should neither be based on speculation nor the visionary projections of a debtor's champion." *Repurchase Corp.*,332 B.R. at 343. See also *Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.)*,779 F.2d 1456, 1460 (10th Cir. 1985).

When a debtor does not have sufficient income to pay both plan payments and ongoing obligations, the plan is infeasible. Courts must refuse to confirm a Chapter 13 plan if they find that the debtor would be unable to make payments under the plan and comply with all other provisions of the plan. *In re Olsen,* 604 B.R. 790, 797 (Bankr. W.D. Wis. 2019). When a proposed plan is to be funded by speculative income, it is impossible for a court to hold that a debtor will be able to make all payments under the plan. Income projections "must be based on concrete evidence of financial progress and must not be speculative, conjectural or unrealistic." *In re Cherry*, 84 B.R. 134, 139 (Bankr. N.D. Ill. 1988). A debtor who is self-employed must show a positive earnings history, current income, and the likely stability [**7] of that income in the future. *In re Soppick*, 516 B.R. 733, 749 (Bankr. E.D. Pa. 2014). *In re Olsen*, 604 B.R. 790, 797 (Bankr. W.D. Wis. 2019).

A plan cannot be confirmed when there is evidence of a deficiency between current income and expenses, particularly when the debtor does not show a reasonable likelihood that expenses would diminish or that income would increase. *Marshall v. Blake*, 885 F.3d 1065, 1083. Here there is significant doubt as to the cashflow of the Debtor. The Debtor on February 19, 2026, sent a letter to Charity explaining he could not meet his financial obligations due to bank account balance of $6.25 reduced income due to seasonal income cycle. The letter sought a six-month forbearance through August. (See attached) The question this poses is: even with the

$1,000 dollars the daughter has offered monthly to assist the Debtor, what has changed to avoid seasonal shortfalls moving forward? The Debtor's income on his schedules is not sufficient to cover his obligations; how will he save? Additionally, what evidence is there that the Daughter can afford to provide $1,000 a month for three years.

## B. The Debtor's Monthly Obligations Exceed His Monthly Income

The Debtor's plan fails the feasibility requirement because his monthly obligations exceed his monthly income, creating a mathematical impossibility. The Debtor's monthly obligations are $6,121.05 which creates a monthly shortfall of $83.05 without considering Debtor's living expenses.

This is not a close case requiring speculation about future income or expenses. This is a mathematical impossibility. The Debtor's income is insufficient by $678.17 to cover his living expenses every single month to meet his obligations under the plan and the state court order. Over the 36-month plan period, this shortfall totals $27,403.92.

Here, the Debtor has not merely failed to demonstrate feasibility, he has demonstrated mathematical infeasibility.

## D. The Debtor's Income Sources Are Unreliable

Beyond the mathematical impossibility created by insufficient income, the Debtor's income sources themselves are unreliable, further undermining feasibility. The Debtor must show that he has regular and reliable income with which to make plan payments.

## 1. Voluntary Family Contributions ($1,000/Month)

The Debtor receives $1,000 per month in contributions from his daughter and son-in-law. These contributions represent 16.6% of the Debtor's total monthly income. However, these are voluntary contributions, not contractual obligations. The Debtor has provided no evidence of any

binding commitment from his daughter and son-in-law to continue these payments for the 36-month duration of the plan. Voluntary family contributions can cease at any time. The daughter and son-in-law may experience their own financial difficulties, may disagree with the Debtor's decisions, or may simply choose to stop providing assistance. The Debtor has no legal recourse to compel continued payments. Courts have questioned feasibility when debtors rely on assistance from family members, particularly when there is uncertainty about whether such assistance will continue. *In re Bovino*, 496 B.R. 492, 500 (Bankr. N.D. Ill. 2013). The Debtor's reliance on these voluntary contributions is particularly problematic given that his income already falls short of his obligations. If these voluntary contributions were to cease, the monthly shortfall would increase to over $1,000, making the plan's infeasibility even more pronounced.

**2. Income from Debtor-Controlled Non-Profit ($4,740/Month)**

The most significant component of the Debtor's income, $4,740 per month, representing 78.5% of his total income, comes from Wheaton Press Foundation, a non-profit entity that the Debtor controls 100%. This income source raises serious feasibility concerns. The Debtor's schedules reveal that Wheaton Press Foundation has no assets, no inventory, and no accounts receivable. This raises fundamental questions about the sustainability of the $4,740 monthly income stream. How can an entity with no assets, no inventory, and no accounts receivable generate nearly $57,000 annually to pay the Debtor? What is the source of these funds? How long can this income stream continue?

When a debtor controls the entity that provides the income (especially what is alleged to be a not-for-profit entity), courts should apply heightened scrutiny to ensure that the income is reliable and sustainable. The Debtor has complete control over Wheaton Press Foundation and its operations (again a not for profit entity). This control creates the potential for manipulation of

income figures or unsustainable distributions as well as the fundamental question of how this Debtor can be a proprietor of an Illinois non for profit corporation).

The lack of any assets or accounts receivable suggests that Wheaton Press Foundation may be dependent on donations or grants that could cease at any time. If the entity has no tangible assets or revenue-generating capacity, the income it provides to the Debtor is inherently speculative. Additionally, as stated above, the Debtor acknowledges that there were $6.25 in his bank account and insufficient income to cover obligations as of February 19, 2026. Given that this single source represents more than three-quarters of the Debtor's income, any uncertainty about its reliability is fatal to feasibility. If this income were to decrease or cease, the Debtor would be unable to make plan payments.

**3. SNAP Benefits ($298/Month)**

The Debtor also receives $298 per month in SNAP benefits. While this is the smallest component of the Debtor's income, it adds to the overall unreliability. SNAP benefits are needs-based and subject to eligibility requirements that can change.

**4. Combined Effect of Unreliable Income Sources**

When the unreliability of these income sources is considered together, the feasibility problems become even more apparent. The Debtor has no wage income-no regular paycheck from an employer. Instead, he relies entirely on voluntary family contributions, benefits from a debtor-controlled non-profit with no assets, and government assistance. None of these sources provides the stability and reliability necessary to support a 36-month Chapter 13 plan.

Confirmation must be denied when debtors fail to show sufficient, regular income to make the required plan payments. Here, the Debtor has not demonstrated that his income sources are sufficiently regular or reliable to sustain plan payments over 36 months, particularly when his

income already falls short of his obligations.

**E. Schedule Inaccuracies Compound Feasibility Problems**

The Debtor's schedules contain significant inaccuracies that further undermine confidence in the plan's feasibility. Schedule E/F lists Charity Browne for only $98,661.84 as a property settlement claim. However, this listing does not separately identify the $67,384.04 marital debt obligation, the remaining $28,416.62 repayment on the marital residence or the $27,403.75 attorney fees awarded by the February 10, 2026 state court order that is secured.

Accurate schedules are essential to the bankruptcy process. They allow the court, the trustee, and creditors to understand the debtor's true financial situation and evaluate whether the proposed plan is feasible and complies with the Bankruptcy Code.

The Debtor's failure to accurately schedule his obligations to Charity affects the feasibility analysis in multiple ways. First, it obscures the true nature and amount of the Debtor's obligations. Second, it prevents proper evaluation of whether the plan provides adequate treatment for these claims. Third, it suggests that the Debtor may not fully understand or acknowledge his financial obligations, raising questions about whether he can realistically comply with the plan.

If the Debtor owes more than he has scheduled, or if his obligations are structured differently than the schedules suggest, the plan may not provide sufficient funds to satisfy those obligations. This uncertainty further undermines feasibility.

**F. Summary**

The Debtor has failed to meet his burden of demonstrating that he will be able to make all payments under the plan and comply with the plan. The plan cannot be confirmed and must be denied.

## II.  THE PLAN FAILS TO PROVIDE PROPER TREATMENT FOR CHARITY'S SECURED CLAIM

The Debtor's Chapter 13 plan cannot be confirmed because it completely fails to address Charity Browne's valid judgment lien against the Debtor's residence. Eight days before filing bankruptcy, the Debtor knew that Charity had recorded a judgment lien against his home. Yet the plan is utterly silent on this secured claim. Schedule D omits Charity entirely. Part 3 of the plan, which addresses treatment of secured claims, contains no mention of Charity's lien. The plan provides none of the three alternative treatments required.  This complete failure to address a secured claim warrants denial of confirmation.

### A. Legal Standard for Treatment of Secured Claims

Section 1325(a)(5) establishes mandatory requirements for treatment of secured claims in Chapter 13 plans. The statute provides that the court shall confirm a plan only if, with respect to each allowed secured claim, the plan satisfies one of three alternatives. Under subsection (A), the holder of the secured claim must accept the plan. Under subsection (B), the plan must provide that the holder retains its lien and receives distributions under the plan not less than the allowed amount of the claim. Under subsection (C), the debtor must surrender the property securing the claim to the holder.

### B. Charity Holds a Valid Judgment Lien Against the Debtor's Residence

The factual record establishes that Charity holds a valid judgment lien against the Debtor's residence. On February 17, 2026, the Kendall County Circuit Court entered judgment in favor of Charity against Christopher for $27,403.75 in attorney's fees. The judgment was entered pursuant to Section 508(b) of the Illinois Marriage and Dissolution of Marriage Act, and the court found the fees to be fair, necessary, and reasonable to prosecute the petitions for rule. On March 23, 2026, a Memorandum of Judgment was recorded in Kendall County, Illinois. The

memorandum was recorded against the property located at 2557 Emerald Lane, Yorkville,

Illinois 60560, with Permanent Index Number 02-22-177-004. This property is the Debtor's

residence. The recording occurred eight days before the Debtor filed his Chapter 13 bankruptcy

petition on March 31, 2026. (See attached)

The timing of the lien's creation is significant. The Debtor knew when he filed his

bankruptcy petition that Charity had recorded a judgment lien against his home just eight days

earlier. He knew of the lien's existence when he prepared his schedules and proposed his plan.

There is no excuse for the complete omission of this secured claim from the bankruptcy filings.

**C. The Plan Completely Fails to Address Charity's Secured Claim**

The Debtor's plan suffers from multiple, systematic failures to address Charity's secured

claim. These failures permeate the schedules and the plan itself, demonstrating a complete

disregard for the requirements of Section 1325(a)(5).

**1. Schedule D Omission**

The Debtor's Schedule D lists only the two Rocket Mortgage loans as secured claims.

Charity is not listed anywhere on Schedule D as a secured creditor.

This omission is material and consequential. Schedule D provides notice to the trustee,

creditors, and the court of which claims are secured and what property secures them. By omitting

Charity from Schedule D, the Debtor has failed to disclose the existence of her judgment lien.

This failure violates the basic disclosure requirements that are essential for trustee

administration, protection of creditors' rights, and the court's confirmation analysis.

**2. No Treatment in Plan Part 3**

Part 3 of the Debtor's plan is titled "Treatment of Secured Claims." This is where the plan

must specify how each secured claim will be treated under Section 1325(a)(5). Charity's lien is

not mentioned in any of these sections.

The plan is completely silent on Charity's secured claim. This silence is fatal to confirmation. Section 1325(a)(5) requires that the plan address each allowed secured claim. A plan that says nothing about a secured claim cannot satisfy the statutory requirements.

**3. Mischaracterization in Schedule E/F**

Rather than listing Charity as a secured creditor in Schedule D, the Debtor lists her in Schedule E/F as an unsecured creditor for $98,661.84, described as a property settlement. The schedules do not separately identify the $27,403.75 attorney fee judgment. More importantly, the schedules do not disclose the existence of the judgment lien recorded against the Debtor's residence. This mischaracterization compounds the problem. Not only has the Debtor failed to list Charity as a secured creditor, but he has affirmatively characterized her as unsecured. This misrepresentation obscures the true nature of Charity's claim and prevents proper treatment in the plan.

The failure to separately identify the attorney fee judgment is also problematic. The $27,403.75 judgment is a distinct obligation from the property settlement. By lumping all amounts together and characterizing them as unsecured, the Debtor has failed to provide the accurate disclosure required by Bankruptcy Rule 1007.

**4. No Satisfaction of Section 1325(a)(5) Requirements**

Because the plan does not address Charity's secured claim at all, it necessarily fails to satisfy any of the three alternatives required by Section 1325(a)(5). The plan does not show that Charity has accepted the plan under subsection (A). The plan does not provide for retention of the lien with payments equal to the allowed amount under subsection (B). The plan does not provide for surrender of the collateral under subsection (C). The court may not approve a plan

that fails to properly treat each allowed secured claim.

## D. The Plan's Failure Warrants Denial of Confirmation

Section 1325(a) uses mandatory language: the court shall confirm a plan if the statutory requirements are met. This means that if any requirement is not satisfied, the court must deny confirmation.

## E. Summary

The Debtor's Chapter 13 plan fails to satisfy the mandatory requirements of 11 U.S.C. § 1325(a)(5) and cannot be confirmed. Charity Browne holds a valid judgment lien against the Debtor's residence, recorded on March 23, 2026, just eight days before the bankruptcy filing. This lien must be treated as a secured claim in the Chapter 13 plan.

The plan completely fails to address Charity's secured claim. Schedule D omits Charity as a secured creditor.

The plan's complete silence on this secured claim is fatal to confirmation. Section 1325(a)(5) mandates proper treatment of each allowed secured claim. The court cannot confirm a plan that fails to address a secured claim at all. The Debtor must file an amended plan that properly discloses Charity's judgment lien in Schedule D and provides for appropriate treatment of the secured claim in Part 3 of the plan, in accordance with one of the three alternatives specified in Section 1325(a)(5).

## CONCLUSION

For the foregoing reasons, Creditor Charity Browne respectfully requests that this Court:

1. Deny confirmation of the Debtor's Chapter 13 Plan filed on March 31, 2026;

2. Require the Debtor to file an amended plan that:

1. Demonstrates feasibility by providing sufficient income to make all required payments;

2. Properly treats Charity Browne's secured claim arising from the judgment lien recorded on March 23, 2026;

3. Accurately schedules all amounts owed to Charity Browne which includes the $95,800.66 in combined marital debts (plus interest) and the $27,403.75 attorney's fee judgment;

4. Lists Charity Browne as a secured creditor in Schedule D and provides appropriate treatment for her judgment lien in Part 3 of the plan; and

3. Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,
Charity Browne

BY:/s/ Penelope N. Bach
Penelope N. Bach
Bach Law Offices, Inc.
P.O. Box 1285
Northbrook, Illinois 60062
847 564 0808